THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARIE CHRISTINE FANYO-PATCHOU,<br>RODRIGUE FODJO KAMDEM, and<br>CHRISTIAN FREDY DJOKO,<br><br>Defendants. | CASE NO. CR19-0146-JCC<br><br>ORDER |

This matter comes before the Court on Defendants' amended motion to dismiss the indictment (Dkt. No. 168). Having considered the parties' briefing and the relevant record, the Court hereby DENIES the motion for the reasons explained herein.

## I.  BACKGROUND

On August 1, 2019, a federal grand jury indicted Defendants on charges of cyberstalking in violation of 18 U.S.C. § 2261A(2)(A)–(B) and conspiracy to commit cyberstalking in violation of 18 U.S.C. § 371. (Dkt. No. 1 at 2–6.) The indictment alleges that Defendants engaged in a campaign of electronic harassment against U.M., a gay man from Cameroon who lives in Seattle. (*See id.*) As part of that alleged campaign, Defendants purportedly disseminated private information about U.M.'s sexual orientation—including nude images of U.M. and his husband—to the Cameroonian community. (*See id.* at 3–6.) Defendants allegedly committed

those acts with the intent to harass or intimidate U.M., and the indictment claims that Defendants succeeded in placing U.M. in reasonable fear of serious bodily injury to himself and his immediate family members. (*See id.*)

Defendants now move to dismiss the indictment, arguing that the Government would violate the First Amendment if it applied § 2261A to the facts of this case. (*See* Dkt. No. 168 at 28–34.) In the alternative, Defendants argue that the charges under § 2261A(2)(B) should be dismissed because § 2261A(2)(B) violates the First Amendment on its face. (*See id.* at 9–28.)

## II.     DISCUSSION

### A.     Defendants' As-Applied Challenge

"There is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of the evidence." *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996) (quoting *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992)). Instead, Federal Rule of Criminal Procedure 12(b) offers defendants a limited mechanism to raise defenses pretrial. In assessing a pretrial defense, a court "should not consider evidence not appearing on the face of the indictment." *See id.* (quoting *United States v. Marra*, 481 F.2d 1196, 1199–1200 (6th Cir. 1973)). A court must also "presume the truth of the allegations in the charging instruments." *See id.* Furthermore, a court may dismiss the indictment only if the defense "can be determined without a trial on the merits." *See* Fed. R. Crim. Pro. 12(b)(3). A defense is capable of pretrial determination "if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *United States v. Covington*, 395 U.S. 57, 61 (1969); *see, e.g.*, *United States v. Chardón-Sierra*, 2019 WL 3211256, slip op. at 4 (D.P.R. 2019) (denying an as-applied challenge because the indictment did not include the defendant's claim that her voicemails "criticize[d] . . . the colonial relationship between the U..S.A. and Puerto Rico"); *United States v. Edwards*, 291 F. Supp. 3d 828, 833–34 (S.D. Ohio 2017) (concluding that an as-applied challenge was premature because the challenge required the court to review the context of Facebook posts and the defendant's intent in posting the material);

*United States v. Mayfield*, 2017 WL 4325616, slip op. at 2–3 (D. Neb. 2017) (rejecting an as-applied challenge because it was up to the jury to look at the context of the defendant's statements to determine if they were true threats).

Here, Defendants' as-applied challenge extensively relies on disputed facts that do not appear in the indictment. For example, the indictment says nothing about U.M. committing immigration fraud. (*See generally* Dkt. No. 1.) Yet Defendants argue that their decision to post illicit images of U.M. was constitutionally protected because those images were, in fact, "evidence of a criminal conspiracy as they documented how [U.M.] and his 'husband' were *posing* as a married happy couple." (*See* Dkt. No. 168 at 30–31) (emphasis in original). The Government disputes that U.M. was in a fraudulent marriage, (Dkt. No. 174 at 4 n.2), and it is up to the jury to decide whether the Government or Defendants are correct, *see* Fed. R. Crim. Pro. 12(b)(3). Accordingly, Defendants' as-applied challenge is premature, and the Court DENIES the challenge without prejudice. *See United Chardón-Sierra*, 2019 WL 3211256, slip op. at 4; *Edwards*, 291 F. Supp. 3d 828 at 833–34; *Mayfield*, 2017 WL 4325616, slip op. at 2–3.

**B.    Defendants' Facial Challenge**

In contrast to Defendants' as-applied challenge, Defendants' facial challenge presents a question of law that can be determined without reference to extrinsic evidence and without a trial on the merits. Accordingly, the Court can and will address that challenge now.

Defendants' facial challenge consists of two separate arguments. First, Defendants argue that § 2261A(2)(B) is substantially overbroad because it criminalizes a large amount of protected speech, from President Donald Trump's tweets to cartoonists' depictions of the Prophet Muhammed. (*See* Dkt. No. 168 at 9–19.) Second, Defendants argue that § 2261A(2)(B) is a content-based regulation on speech that is subject to and fails strict scrutiny. (*See* Dkt. No. 168 at 19–28.) The Court concludes that both arguments were either explicitly or implicitly rejected by the Ninth Circuit in *United States v. Osinger*, 753 F.3d 939 (9th Cir. 2014).

//

1.  Overbreadth

To succeed on a First Amendment "overbreadth" challenge, a person must show that "a substantial number of [the challenged statute's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008)). This standard is exacting: the Supreme Court has said that the overbreadth doctrine should be employed "only as a last resort," *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973), and that "[r]arely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

In *Osinger*, the Ninth Circuit rejected an overbreadth challenge to the 2006 version of § 2261A. At the time, the statute imposed criminal penalties on anyone who

> with the intent . . . (A) to kill, injure, harass, or place under surveillance with intent to kill, injure, harass, or intimidate, or cause substantial emotional distress to a person in another State or tribal jurisdiction or within the special maritime and territorial jurisdiction of the United States . . . uses the mail, any interactive computer service, or any facility of interstate or foreign commerce to engage in a course of conduct that causes substantial emotional distress to that person or places that person in reasonable fear of the death of, or serious bodily injury to, [that person, a member of the immediate family of that person, or a spouse or intimate partner of that person].

18 U.S.C. § 2261A(2)(A) (2006). The Ninth Circuit concluded that the statute was not substantially overbroad because it criminalizes a "course of *conduct*," thereby making "the proscribed acts . . . tethered to . . . underlying criminal conduct and not to speech." *Osinger*, 753 F.3d at 944 (emphasis in original). In addition, the Ninth Circuit found it "difficult to imagine what constitutionally-protected speech would fall under [the statute's] prohibitions" given that "the statute requires both malicious intent on the part of the defendant and substantial harm to the victim." *Id.* (quoting *United States v. Petrovic*, 701 F.3d 849 (8th Cir. 2012)).

The Court is, of course, required to apply controlling Ninth Circuit precedent. *See Hart v.*

*Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001). And on its face, *Osinger* would seem to control here. However, Defendants argue that *Osinger* does not dictate the outcome in this case for three reasons. First, Defendants claim that the 2013 amendments to § 2261A broadened the statute to such an extent that *Osinger* no longer applies. (*See* Dkt. No. 168 at 13–14.) Second, Defendants claim that recent Supreme Court decisions have "cast [*Osinger*] into doubt." (*See* Dkt. No. 181 at 9.) And third, Defendants invite the Court to reconsider *Osinger* and "conduct the . . . overbreadth test anew." (*Id.* at 3.) The Court finds none of these reasons persuasive.

### i.  Changes to § 2261A

In 2013, Congress amended the relevant portions of § 2261A to read as follows:

> Whoever . . . (2) with the intent to kill, injure, harass, *intimidate*, or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses the mail, any interactive computer service or *electronic communication service or electronic communication system* of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that—
>
> . . .
>
> (B) causes, *attempts to cause, or would be reasonably expected to cause* substantial emotional distress *to* [that person, *an immediate family member of that person, or a spouse or intimate partner of that person*],
>
> Shall be punished as provided in section 2261(b) of this title.

18 U.S.C. § 2261A(2)(B) (I Supp. II 2013–2015) (emphasis added). In amending § 2261A, Congress changed the statute's intent requirement by adding "intimidate" and removing "cause substantial emotional distress."[1] Congress also clarified that two facilities of interstate or foreign commerce—"electronic communication service[s]" and "electronic communication system[s]"—

---

[1] The amended statute also refers to "course[s] of conduct . . . that . . . attempt[] to cause . . . substantial emotional distress." 18 U.S.C. § 2261A(2)(B). The meaning of this language is unclear. Perhaps when Congress referred to "course[s] of conduct" "attempting" to achieve a certain goal, Congress meant to refer to the defendant's intent. However, Defendants do not discuss how Congress changed the intent requirement in § 2261A. Accordingly, the Court does not take a position that language's meaning.

ORDER
CR19-0146-JCC
PAGE - 5

are expressly covered by the statute.[2] In addition, Congress eliminated the requirement that a defendant direct their course of conduct towards "a person in another State or tribal jurisdiction or within the special maritime and territorial jurisdiction of the United States." Congress also broadened the statute to cover scenarios where the defendant's behavior causes (or would be expected to cause) substantial emotional distress to certain people besides the defendant's intended victim. Finally, Congress prohibited courses of conduct that "would be reasonably expected to cause substantial emotional distress" even if the course of conduct does not actually cause such distress.

Defendants focus on this last change, arguing that it broadens § 2261A(2)(B) to such an extent that *Osinger* is no longer good law. (*See* Dkt. No. 168 at 13–14.) Yet *Osinger* focused on two core elements of § 2261A that Congress retained: the statute still prohibits "courses of conduct" and still requires "malicious intent." *See* 753 F.3d at 944. According to *Osinger*, these elements tether the statute's proscribed acts to conduct, not speech, and make it "difficult to imagine what constitutionally protected speech would fall under [the statute's] prohibitions." *Id.* Given that these elements remain the same, the Court cannot say that the statute now excessively targets protected speech simply because Congress broadened the statute to cover courses of conduct that are reasonably expected to but do not actually cause substantial emotional distress. While the statute is broader, its fundamental nature—as construed by the Ninth Circuit in *Osinger*—remains the same.[3]

---

[2] In all likelihood, these facilities were already covered by the 2006 version of the statue, which applied to courses of conduct that used "any interactive computer service[] or any facility of interstate or foreign commerce." 18 U.S.C. § 2261A (2006).

[3] The Court admits that it is skeptical of how *Osinger* construed § 2261A. The Court struggles to see how the phrase "course of conduct" uniquely focuses the statute towards conduct rather than speech. After all, a course of conduct is defined as "a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose," 18 U.S.C. § 2266(2), and nothing in § 2261A(2)(B) prevents that "pattern of conduct" from being composed of two or more acts *of speech*—as this case shows. Moreover, the Court does not find it "difficult to imagine" a pattern of speech that is constitutionally protected even if it is both intended to harass and either causes or could reasonably be expected to cause substantial emotional distress. People often viciously harass

ORDER
CR19-0146-JCC
PAGE - 6

ii.     *Recent Supreme Court Decisions*

Defendants cite to several Supreme Court cases decided after *Osinger* and suggest that the Court should follow those cases instead of *Osinger*. (*See* Dkt. Nos. 168 at 14, 181 at 9, 190 at 3.) However, none of those cases involved an overbreadth challenge, a law that regulated a "course of conduct," or a law that contained a "malicious intent" requirement similar to the one found in § 2261A(2)(B). Instead, those cases addressed the following issues: (1) whether regulations of "professional speech" should be subject to a lower level of scrutiny, *Nat'l Inst. of Family & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371–76 (2018); (2) whether ordinary "rule[s] of construction" dictate that 18 U.S.C. § 875(c) contains a scienter requirement, *Elonis v. United States*, 135 S. Ct. 2001, 2009–13 (2015) ("Given our disposition, it is not necessary to consider any First Amendment issues."); and (3) whether Congress could generally bar robocalls while specifically allowing robocalls "made solely to collect a debt owed to or guaranteed by the United States," *Barr v. Am. Assoc. of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2346–47 (2020) (quoting 42 U.S.C. § 226(b)(1)(A)(iii)). In addressing those issues, the Supreme Court neither explicitly nor implicitly overruled *Osinger*. Consequently, the Court must follow *Osinger* until a

---

others with words that do not rise to the level of true threats, are not defamatory, and do not fall under any other category of unprotected speech. One need only look to the internet for countless examples. *See* Jessica Guyn, *If You've Been Harassed Online, You're Not Alone. More than Half of Americans Say They've Experienced Hate*, USA Today (Feb. 13, 2019, 6:00 a.m.), https://www.usatoday.com/story/news/2019/02/13/study-most-americans-have-been-targeted-hateful-speech-online/2846987002/ ("More than half of Americans—53 percent—say they were subjected to hateful speech and harassment in 2018.").

But the Court's view about § 2261A is not what matters. What does matter is that the Ninth Circuit already held that § 2261A is not overbroad. *See Osinger*, 753 F.3d at 944. The Court must respect that holding, and the Court will not use the slight changes to § 2261A as an excuse to impose the Court's own view. As the Ninth Circuit has explained,

> Binding authority . . . cannot be considered and cast aside; it is not merely evidence of what the law is. Rather, caselaw on point *is* the law. If a court must decide an issue governed by a prior opinion that constitutes binding authority, the later court is bound to reach the same result, even if it considers the rule unwise or incorrect.

*Hart*, 266 F.3d at 1170.

ORDER
CR19-0146-JCC
PAGE - 7

higher court says otherwise.

### iii.   *Conducting the Overbreadth Analysis Anew*

Finally, Defendants ask the Court to conduct the overbreadth analysis anew. (*See* Dkt. No. 181 at 3.) The Court declines Defendants' invitation. For even if the Court believed that *Osinger* misinterpreted § 2261A or misapplied Supreme Court precedent, the Court must follow *Osinger* "unless and until overruled by a body competent to do so." *Hart*, 266 F.3d at 1170.

### 2.   Strict Scrutiny

Defendants also suggest that the Court may freely hold that § 2261A(2)(B) fails strict scrutiny because *Osinger* did not address whether § 2261A is a content-based regulation subject to strict scrutiny. (*See* Dkt. No. 168 at 14–15, 19–28) (arguing that *Osinger* is distinguishable because "[Defendants] arguments here are different than those raised in *Osinger*"). Admittedly, the precise difference between strict scrutiny analysis and the overbreadth doctrine is anything but clear. *See Parallel Doctrinal Bars: The Unexplained Relationship Between Facial Overbreadth and "Scrutiny" Analysis in the Law of Freedom of Speech*, 11 Elon L. Rev. 95, 110–22 (2019). But whatever the precise difference may be, the Supreme Court has said that a law is subject to and fails strict scrutiny only if the law "in all its applications directly restricts protected First Amendment activity and does not employ means narrowly tailored to serve a compelling governmental interest." *Secretary of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 974, 965 n.13 (1984). *Osinger* rejected the idea that § 2261A "in all its applications directly restricts protected First Amendment activity"; indeed, *Osinger* concluded that § 2261A primarily regulates conduct, not speech. *See* 753 F.3d at 944. Thus, *Osinger* forecloses Defendants' separate facial challenge even though *Osinger* did not expressly address whether § 2261A is a content-based regulation on speech that is subject to strict scrutiny. The Court therefore DENIES Defendants' facial challenge.

### III.   CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion to dismiss the

1  indictment (Dkt. No. 168). The Court also DENIES as moot Defendants' previously filed motion
2  to dismiss (Dkt. No. 138).
3        DATED this 19th day of August 2020.

*[signature]*

John C. Coughenour
UNITED STATES DISTRICT JUDGE